## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| **United States of America,** | Criminal No. 5:20-49-KKC-MAS-1 |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **Jeremy Lamont Duncan,** | |
| Defendant. | |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Jeremy Lamont Duncan's motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Rule 33. [DE 81.] Viewing the evidence in the light most favorable to the United States, there was sufficient proof presented at trial upon which rational trier of fact could, and did, find Duncan guilty beyond a reasonable doubt, and Duncan has failed to present any argument or claim in his motion sufficient to form a basis for a Rule 29 motion. Likewise, the Duncan has failed to present any information or cite any authority indicating that the jury's verdict or the Court's evidentiary rulings amounted to a miscarriage of justice to support the extraordinary relief of a new trial under Rule 33. Duncan's motions will therefore be denied.

## BACKGROUND

On September 26, 2019, narcotics detectives utilized a confidential informant (CI) to purchase fentanyl from a target known to

law enforcement as Allante Brown. Detectives Kelly Shortridge and Bryan Cobb met with the CI who placed recorded phone calls to an apartment identified as Unit 4 of a multi-unit complex on Ballpark Drive in Lexington, Kentucky. The purpose of these phone calls was to set up a time at which the informant would buys drugs on the Ballpark Drive premises. Police later learned that the apartment belonged to Defendant Jeremy Lamont Duncan.

Before the planned buy, Sgt. Rob Sinnott conducted surveillance at the front of the apartment complex and saw a vehicle arrive and quickly depart from the direction of Unit 4. This information was relayed to marked vehicles patrolling the area, and Officer Brian Baker responded by stopping the departing vehicle out of sight from the apartment complex. During the traffic stop, officers found Allante Brown in the passenger seat of the vehicle and in possession of two firearms and a large quantity of cash. Brown was arrested and transported to the local jail.

Around the time of the traffic stop, the CI went ahead with the planned controlled buy at Unit 4. The CI purchased 0.874 grams of a mixture of fentanyl and heroin from someone he did not know but described as a black male, approximately 5'8" or 5'9", weighing about 160 pounds, and wearing a fitted, plain black T-shirt. The CI also stated the man was wearing distinctive black eyewear, which made him appear "intellectual." Although it was unknown to police at the time, ATF Special Agent John Morgan, listened to several hours of audio recordings and was later able to identify the voice on the recorded calls as belonging to Jeremy Lamont Duncan.

In the early hours of September 28, 2019, Officers Miller Owens and Christopher Qualls responded to a narcotics complaint at Unit 4. As they approached Unit 4, officers noted a wireless surveillance camera attached the trunk of a rental vehicle parked outside. While attempting to make contact with the suspects inside, the lights inside the apartment were turned off within. Eventually, several subjects made contact with the officers at the front door, including Defendant Jeremy Lamont Duncan. Duncan matched the CI's description of the person who sold the fentanyl—specifically, Duncan's clothing and distinctive eyeglasses.

Duncan was detained at the front door and Officer Owens eventually entered the residence for safety after observing another occupant travel down a darkened hallway. In the hallway bathroom, two additional persons were located. While inside the residence, Officer Owens observed suspected narcotics and narcotics-related paraphernalia. Due to the complaint and observations, narcotics detectives were requested to assist. Detective Cobb and Sgt. Sinnott responded. Police got a search warrant for Unit 4 and executed it that same night. The police found no traditional furnishings such as furniture, food, or cutlery in the apartment.

What police did find were items consistent with drug trafficking, preparation, and packaging. Officers also located two firearms, ammunition, and a backpack containing approximately 325 grams of fentanyl and heroin in a hallway closet. An additional, loaded firearm was found inside the backpack with the narcotics. Further, officers seized two empty firearm boxes that matched by serial number the firearms found on Allante Brown from the September 26 traffic stop.

In statements made during the search, Duncan's indicated that he owned or rented the apartment and knew about the narcotics and firearms inside it. After his arrest, the Duncan made several recorded jail phone calls in which he talked about the case. The conversations confirmed Duncan's knowledge of specific firearms, his involvement with narcotics trafficking, suspicions of possible police informants, and efforts to have other people claim ownership of the firearms for him.

Officers also found Duncan's cellular devices during the search. By examining telephone calls and text messages, police officers located the device that the CI had contacted to set up the September 26 controlled buy. Police also found another device that contained a text message in which Duncan claimed he was "on ballpark pressing n bagging up all the half's."

On May 21, 2020, Duncan was indicted and charged with possession of narcotics and firearms on September 28. A superseding indictment was issued on October 1, 2020, adding a single count of distribution of fentanyl in the September 26 controlled drug buy.

## ANALYSIS

Motions for a judgment of acquittal and a new trial are often filed contemporaneously, but they are governed by two different rules of procedure with two different standards. Under Federal Rule of Criminal Procedure (FRCP) 29, "notwithstanding the jury verdict, 'the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." *United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021) (quoting FRCP 29(a)). In making this determination, the Court "view[s] the evidence in the

light most favorable to the prosecution" determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). Because the Court "does not judge the credibility of witnesses or weigh evidence, and [instead] draws all reasonable inferences in the government's favor," *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005), "a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

Rule 33 is broader and allows the Court to "take on the role of a thirteenth juror, weighing evidence and making credibility determinations firsthand to ensure there is not a miscarriage of justice." *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018). However, "a trial court should only grant the motion when the verdict is against the 'manifest weight' of the evidence." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019). In doing so, the Court considers various principles. "On the one hand, [the trial court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). "Only in extraordinary circumstances, when the verdict exceeds the bounds of reasonableness, should the district court order a new trial." *Id*. "It's only when 'exceptional circumstances' arise that a trial judge 'may intrude upon the jury function of credibility assessment." *Id.* at 628 (quoting *United States v. Cote*, 544 F.3d 88, 101 (2nd Cir. 2008)). Such circumstances arise in

situations where the trial features accounts that "defy physical realities" or "collapse in on themselves due to internal inconsistencies." *Id.*

Here, Duncan alleges three grounds in support of both his motion for a judgment of acquittal and his motion for a new trial:

(1) admission of the Allante Brown traffic stop;

(2) the lack of forensic evidence during the search warrant; and

(3) inconsistent statements by detectives in the application of the search warrant.

Regardless of the standard applied under each criminal rule of procedure, none of the grounds alleged by the Duncan form a basis to void the jury's verdict or grant a new trial in this matter.

## I.  Duncan's Motion for Judgment of Acquittal Under Rule 29

Duncan asserts that the Court erred in admitting evidence of the Allante Brown traffic stop along with evidence found during the search based upon an allegedly defective search warrant. Although the Court finds that the evidence was properly admitted, for purposes of a Rule 29 analysis, a trial court considers "erroneously admitted evidence as well as properly admitted evidence in reviewing the sufficiency of the evidence for purposes of evaluating a judgment of acquittal." *United States v. Lopez-Medina*, 461 F.3d 724, 750 (6th Cir. 2006); *see also United States v. Seymour*, 468 F.3d 378, 388 (6th Cir. 2006) ("All of the evidence admitted at trial, including improperly admitted evidence, may be considered in determining whether sufficient evidence supports a guilty verdict."). Under a Rule 29 analysis, the Court determines

whether the admitted evidence is sufficient to support the verdict, regardless of whether it was admitted properly or in error.

As an initial matter, Duncan's argument regarding the lack of forensic testing done on various items of evidence as well as criticism of the detectives' testimony does not form a proper basis for granting a Rule 29 motion. These are arguments that essentially challenge the credibility of the witnesses, evidence, and investigation. Credibility determinations are the province of the jury and not the trial court for purposes of a Rule 29 motion.[1]

In this case, the jury heard sufficient evidence at trial to support all counts of conviction. Regarding the September 26 incident, the jury heard testimony that a controlled narcotics transaction for fentanyl took place at an apartment rented by Duncan. The jury also heard audio recording of phone calls setting up the controlled buy and a recording of the buy itself, with testimony of ATF Special Agent John Morgan identifying Duncan's voice. Further, the phone found in the search was confirmed to be the one on which the CI contacted Duncan to set up the drug transaction. Finally, the confidential informant provided a description of the subject from whom he purchased the narcotics, and that description matched Duncan.

The jury considered that evidence along with other evidence about Unit 4, which had no furnishings, groceries, dishes , or other signs that someone actually lived in the unit. However, Duncan was confirmed

---

[1] The Court notes that the jury did hear these arguments as Duncan referenced, challenged, and criticized the lack of forensic testing and the detectives' testimony through cross-examination and closing argument. The jury was free to accept or reject Duncan's characterization of the investigation and the witnesses, and it chose to reject them.

to be the legal occupant of the residence. Moreover, in statements to police, Duncan discussed the narcotics and firearms found in the apartment. In recorded jail calls with other individuals, Duncan also expressed suspicions of potential informants, and articulated plans to obstruct the investigation by having other individuals claim ownership of the firearms for him. And just hours before the police knocked on his door, Duncan authored a text message in which he described preparing and packaging narcotics at his apartment on Ballpark Drive.

In the light most favorable to the United States, this is more than sufficient evidence for a rational trier of fact to have found that Duncan was guilty of the charged offenses beyond a reasonable doubt. Thus, Duncan's motion under FRCP 29 will be denied.

## II.     Duncan's Motion for a New Trial Under Rule 33

### A.     *The Allante Brown Traffic Stop*

In his Motion for a New Trial under FRCP 33, Duncan objects to evidence obtained from the search warrant along with evidence obtained from the Allante Brown Traffic Stop. That traffic stop revealed drugs, money, and firearms consistent with drug trafficking. Unit 4 was under police surveillance, and Brown was stopped only minutes after he was seen leaving the apartment. Duncan cites no articulable basis as to why the evidence obtained from the Brown traffic stop is irrelevant to Duncan and the items found in the Unit 4 apartment. Both before and during trial, the Court spent substantial time considering the admission of the traffic stop and the purpose for which the evidence could be considered by the jury. Duncan's current motion presents no new argument, evidence, or legal authority that would justify disturbing the

Court's earlier evidentiary ruling. Accordingly, the Court finds that there is no basis under Rule 33 for a new trial concerning the traffic stop of Allante Brown on September 26, 2019.

At trial, the United States was required to prove that Duncan distributed fentanyl on September 26, 2019. The CI and detectives testified that they had expected to conduct the drug transaction directly with Allante Brown. However, when they arrived at the apartment, the CI engaged with a person that neither he nor the officers knew. Accordingly, Duncan's identity was a necessary element of proof at the trial.

Evidence of the Brown traffic stop was relevant not only to the background of the entire investigation but was critically linked to the overall relationship of the parties and their roles in the offense. "[B]ackground or *res gestae* evidence consists of those other acts that inextricably intertwined with he charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). As established at trial, Brown was the intended target of the narcotics purchase on September 26 and was observed leaving the area of the Unit 4 shortly before police stopped him and found drugs, money, and firearms. This traffic stop occurred at or about the same time the CI purchased drugs at Unit 4. Moreover, during the search of Unit 4, empty gun boxes were found in a closet that matched the guns seized from Brown only moments before. Duncan argues that he was prejudiced by the implication of an uncharged conspiracy with Brown and maintains that this alone serves as a basis for a new trial. It is well established,

however, that the fact that a defendant is not charged in a conspiracy is not a bar to admissibility of evidence suggestive of a conspiracy. For example, statements made by co-conspirators are frequently admitted under FRE 801(d)(2)(E) "even when a conspiracy has not been charged." *United States v. Blankenship*, 954 F.2d 1224, 1231 (6th Cir. 1992). Any possible prejudice to Duncan was significantly diminished by the Court's limiting instruction regarding the Brown traffic stop. *United States v. Starnes*, 552 F. App'x 520, 524 (6th Cir. 2014) ("[W]hen a court instructs a jury to do something, there is a strong presumption that the jury will follow that instruction.").

### B.     *Lack of Forensic Testing of Evidence*

Duncan claims that the lack of forensic testing on the items seized during the search warrant on September 28, 2019, presents miscarriage of justice and suggests that the verdict was against the "manifest weight" of the evidence. But Duncan cites to no authority showing that forensic evidence is required for conviction on any element of the charged offenses. Duncan's argument is essentially that the investigation and the evidence presented against him could have been better, but again, he cites no authority that requires that elements of an offense be proved with the best possible evidence, nor that a law enforcement investigation must be the most thorough investigation possible. The investigation and evidence were more than sufficient to support a conviction. Duncan's argument that the case against him theoretically could have been better does not show a miscarriage of justice or that the jury's verdict was against the manifest weight of the evidence.

### C. The Search Warrant Affidavit

Duncan also claims that Detective Cobb submitted a false and/or misleading affidavit in support of the search warrant obtained by the police on September 28, 2019, specifically that Detective Cobb falsified information related to his prior dealings with the CI. This Court has already determined that the search warrant presented probable cause based solely on either the events of September 26, 28, or a combination of the two, [DE 30 at 9–12], and the CI's prior history was irrelevant to the determination of probable cause. Importantly, Duncan does not dispute that a controlled narcotics purchase took place on September 26 at his apartment. The only portion of the affidavit that he claims is false is Detective Cobb's statement that the CI had previously conducted other purchases for law enforcement. Duncan conceded that the CI and Detective Shortridge were credible in making the argument that Detective Cobb's testimony was false. As he did at trial, Duncan does not challenge the occurrence of the controlled buy, but instead argues that he was not the suspect involved.

Duncan's arguments are similar to the situation presented in *United States v. Green*, 572 F. App'x 438 (6th Cir. 2014). In *Green*, the defendant challenged statements made by law enforcement in a search warrant. However, the Sixth Circuit found that "none of [Green's] allegations directly challenge[d] the affidavit's allegations that the three controlled purchases in fact occurred." *Id.* at 442. The Sixth Circuit also stated that "even if we assume arguendo that Green has made a substantial preliminary showing that several statements tangentially related to the controlled purchases were intentionally or recklessly

– 11 –

falsified, his argument would still fail because even 'a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location.'" *Id.* (quoting *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012)).

Thus, even if the Court were to assume Detective Cobb's statement regarding the prior use of the confidential informant was "intentionally or recklessly falsified," the search warrant would still establish probable cause based on the single controlled purchase of September 26 as supported by the testimony of Detective Shortridge, Sergeant Sinnott, the CI, audio recordings of the buy, the call logs and text messages of the target cellular device, and the seized purchased narcotics.

Duncan has failed to present arguments or evidence that would undermine the Court's previous evidentiary rulings before and during trial. His arguments also do not suggest that the jury's verdict "exceeded[ed] the bounds of reasonableness." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). The United States presented a substantial amount of evidence against Duncan at trial, and the jury's verdict is not against the manifest weight of that evidence.

## Conclusion

Accordingly, for the reasons stated in this opinion and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Jeremy Lamont Duncan's motion for judgment of acquittal, or in the alternative, motion for a new trial [DE 81] is **DENIED**.

Dated March 16, 2022.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY