UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 5:20-cr-00049-KKC-MAS |
| v. | ) | and |
| | ) | Civil Action No. |
| JEREMY LAMONT DUNCAN, | ) | 5:23-cv-00186-KKC-MAS |
| | ) | |
| Defendant/Movant. | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Jeremy Duncan's ("Duncan") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. Duncan alleges his trial counsel was ineffective on several grounds. [DE 118, 123]. The United States responded in opposition. [DE 122]. After thoroughly reviewing the record in its entirety, the Court recommends Duncan's motion be denied for the reasons stated below.

**I.    RELEVANT FACTUAL BACKGROUND**

On May 21, 2020, Duncan was indicted by the grand jury on five counts. A few months later, a superseding indictment added a sixth count. Duncan faced the following charges: (1) distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribution 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1); (3) possession with intent to distribution cocaine in violation of 21 U.S.C. § 841(a)(1); (4) possession of firearms in furtherance of drug trafficking crimes

1

in violation of 18 U.S.C. § 924(c); (5) previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (6) previously convicted of the crime of domestic violence in possession of a firearm in violation of 18 U.S.C. § 922(g)(9).

According to the Presentencing Investigation Report in this matter [DE 104], law enforcement began investigating complaints of drug activities at the residence of Duncan. [DE 104, Page ID# 1273]. Law enforcement initially conducted traffic stops of individuals leaving the residence. [DE 104, Page ID# 1273]. Those individuals were found to be in possession of firearms and controlled substances. [DE 104, Page ID# 1274]. Next, law enforcement conducted several controlled buys of narcotics from the residence using a confidential informant. [DE 104, Page ID# 1274]. "Several text messages located on a phone used by the defendant to conduct the CI buy reflected that additional drug trafficking with directions to narcotics purchasers to come to Duncan's residence on Ballpark Drive to obtain narcotics." [DE 104, Page ID# 1274].

Eventually, law enforcement obtained a search warrant for the residence. [DE 104, Page ID# 1274]. On September 28, 2019, law enforcement searched the residence, finding "three handguns, ammunition, drug trafficking supplies, 3.459 grams of cocaine and approximately 325.899 grams of a heroin and fentanyl mixture." [DE 104, Page ID# 1274]. "Additionally, during the search of the Duncan's residence/apartment, officers collected digital scales, multiple boxes of sandwich bags, Pyrex mixing cups, a blender with narcotics residence, and a sifter." [DE 104, Page ID# 1274]. Law enforcement also located Duncan's cell phone during the search. "By examining telephone calls and text messages, police officers located the device

2

that the [informant] had contacted to set up the . . . controlled buy. Police also found another device that contained a text message in which Duncan claimed he was 'on ballpark pressing n bagging up all the half's.'" [DE 92, Page ID# 1224].

Following a three-day jury trial, the jury convicted Duncan on all counts except Count 3, the cocaine charge. [DE 76]. Following the verdict, Duncan filed a motion for judgment of acquittal notwithstanding the verdict or a new trial [DE 81], which the district court denied [DE 92]. Duncan was sentenced to 204 months imprisonment followed by a five-year term of supervision. [DE 98, 105].

Duncan appealed the judgment. [DE 109]. There, he argued that the trial court improperly denied his request to conduct a hearing pursuant to "*Franks v. Delaware*, 438 U.S. 154 (1978), because, in his view, testimony at trial undercut information contained in the affidavit used to obtain a search warrant." [DE 109, Page ID# 1316]. The Sixth Circuit disagreed and affirmed the judgment on November 8, 2022. [DE 109].

Duncan timely filed this habeas petition on June 21, 2023. [DE 115].

## II.  ANALYSIS

In his petition, Duncan presents several grounds for claims of ineffective of assistance of counsel directed at his trial counsel, Chris Spedding ("Spedding"). Duncan also asserts a myriad of alleged constitutional violations from his trial. The Court will take these in turn.

### A.  LEGAL FRAMEWORK

Under § 2255, a federal prisoner may obtain relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such

3

sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). A constitutional basis for § 2255 relief requires "an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Any non-constitutional error must constitute a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990). A § 2255 movant typically must prove any factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

One class of alleged constitutional error is ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment. The standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), governs IAC claims. To prevail, a movant must prove (1) that defense counsel's performance was deficient, and (2) that the demonstrated deficiency prejudiced the movant. *Id.* at 687. To establish deficient performance, a movant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. "Judicial scrutiny of counsel's

4

performance must be highly deferential[,]" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A prejudice showing requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Id.* at 694–95. The Court "must consider the totality of the evidence" in assessing prejudice. *Id.* at 695. To satisfy the prejudice prong "[i]n a guilty plea context 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Id.* at 730; *Strickland*, 466 U.S. at 697.

B.  **GROUND 1: CELL PHONE EVIDENCE**

Duncan's first ground attacks Spedding for failing to advise Duncan that the United States would introduce certain cell phone evidence at trial. [DE 118, Page ID# 1393, 1404]. In other words, Duncan argues that if he knew the United States was going to introduce the cell phone evidence at trial, then he would have pleaded guilty prior to trial. [DE 118, Page ID# 1404-05]. Duncan does not support this claim with anything other than his bare claim that "counsel for Mr. Duncan could have and should have but did not advise Mr. Duncan that the government could and almost certainly would introduce the cell phone evidence at trial." [DE 118 at Page ID# 1404].

5

Even if the Court were to assume the first prong of *Strickland* satisfied—that Spedding never informed Duncan of the possible admission of the cell phone evidence—Duncan must still establish prejudice. To prove prejudice, as discussed above, Duncan must establish that but for Spedding's omission, he would have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Duncan cannot make that showing merely by telling us now that he would have pleaded guilty if he knew about the cell phone evidence. As the Sixth Circuit has made clear, "[t]he test is objective, not subjective." *Pilla v. United States*, 668 F.3d 368, 372 (6th Cir. 2012) (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). To obtain relief, Duncan must demonstrate that his decision to proceed to trial as opposed to plead guilty objectively hinged upon the cell phone evidence. *Id.* ("Pilla cannot make that showing merely by telling us now that she would have gone to trial then if she had gotten different advice."). The problem for Duncan is that the cell phone evidence was a bit player in the case against him. As the United States detailed in its response, "there was ample 'other evidence' supporting Duncan's conviction". [DE 122, Page ID# 1448]. For example, as the Court discussed in its opinion denying Duncan's motion for judgment of acquittal, there was a controlled purchase by a confidential informant with Duncan at his apartment. [DE 92, Page ID# 1227]. Duncan's apartment "had no furnishings, groceries, dishes, or other signs that someone actually lived" there. [DE 92, Page ID# 1227]. Duncan discussed with law enforcement the narcotics and firearms found in his apartment. [DE 92, Page ID# 1228]. On numerous jail calls, Duncan "expressed suspicions of potential

informants, and articulated plans to obstruct the investigation by having other individuals claim ownership of the firearms for him." [DE 92, Page ID# 1227].

A showing of prejudice requires a "reasonable probability that, but for counsel's errors, the judicial outcome would have been different." *Strickland*, 466 U.S. at 694-95. Duncan can make no such showing on his first ground. Even if the cell phone evidence was completely removed from the trial, Duncan objectively faced insurmountable evidence establishing his guilt.

C.   GROUND TWO: BENCH TRIAL

In his second argument, Duncan faults Spedding for failing to seek a bench trial as opposed to a jury trial. Per Duncan, Spedding "could have but did not advise Mr. Duncan that he could retain dramatically greater eligibility for downward adjustment under U.S.S.G. § 3E1.1." [DE 118, Page ID# 1406]. Duncan's argument, however, has two fatal flaws.

Again, as with the prior ground, the Court will assume *arguendo* that Spedding did not tell him of the possibility of a bench trial and that such a failing meets the first element of *Strickland*. A bench trial in such a circumstance is such an odd outlier of a procedural mechanism that it is believable that Spedding would not have described every potential, remote possibility of how Duncan's case could be resolved. And again, to establish prejudice, Duncan must demonstrate a reasonable probability that, but for counsel's deficient performance, Duncan would have received a different outcome. *See Nieto v. United States*, No. 1:05-CR-6, 2011 WL 4473778, at *5 (E.D. Tenn. Sept. 26, 2011) (rejecting as speculative a habeas claim based on a claim that a bench trial would have resulted in a different outcome). And Duncan must be

7

specific as to how a bench trial would have changed the outcomes as opposed to just general speculation. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*.").

The first flaw in Duncan's argument is that any bench trial would have required the consent of the United States and the approval of the Court. FED. R. CRIM. P. 23(a)(1)-(3). The United States, much less the Court, has never suggested it would provide such consent. [DE 122, Page ID# 1449]. Procedurally, Duncan's arguments make assumptions that are not supported by the record.

The second flaw goes to the merits of his argument. Again, Duncan contends that a bench trial would have allowed him to preserve his objections to the motion to suppress and Guidelines calculation all while receiving a downward departure for acceptance of credit under U.S.S.G. § 3E1.1. However, Duncan is simply wrong on this point. "To receive this reduction, the defendant must truthfully admit the conduct compromising the offense(s) of conviction and truthfully admit or not falsely deny additional relevant conduct for which the defendant is accountable under § 1B1.3." *United States v. Taylor*, 483 F. App'x 992, 996 (6th Cir. 2012) (citing U.S.S.G. § 3E1.1, cmt. n.1(A)). "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 cmt. n.2. There is, however, an exception.

> In rare situations a defendant may clearly demonstrate an acceptance
> of responsibility for his criminal conduct even though he exercises his

8

> constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*Id*. From the start, Duncan is already looking at the "rare situation" in the hopes that he could have received a reduction in his sentence if he proceeded with a bench trial. Duncan speculates with some confidence that the Court would have given him such a rare reduction. *See United States v. Khalil*, 279 F.3d 358, 371 (6th Cir.2002) (noting that reductions for acceptance of responsibility are "rare" under U.S.S.G. § 3E1.1 when the defendant exercises his right to trial). And even setting aside the scarcity, Duncan never conceded any factual points at his jury trial or in the weeks leading up to that trial. As referenced above, Duncan contested the admission and truth of the cell phone evidence. Duncan was heard on several jail calls where he expressed his "suspicions of possible police informants [and] efforts to have other people claim ownership of the firearms for him." [DE 92, Page ID# 1224]. Duncan fought against the facts presented by the United States at trial and continued arguing about those facts at sentencing. Nothing about Duncan's pretrial actions or trial strategy suggest he was willing to accept responsibility. Duncan cannot now, having lost his jury trial, rewrite the record by suggesting he would have accepted responsibility if he would have known he would have lost.

### D.   GROUND 3: CUMULATIVE EFFECT OF COUNSEL

Duncan's third ground is broadly framed as concerning the "both the individual and cumulative impact of multiple deficiencies or error by counsel during the pretrial,

9

plea, trial, sentencing, and direct appeal process." [DE 118, Page ID# 1395]. Duncan provides some limited specificity in support of this sweeping statement identifying four issues of concern. "Under cumulative-error analysis, 'a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. . . . That is so because errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . may cumulatively produce a trial setting that is fundamentally unfair.'" *United States v. Warman*, 578 F.3d 320, (6th Cir. 2009) (quoting *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)). Duncan cannot make such a showing here.

Initially, Duncan argues Spedding failed to timely file and argue a suppression motion concerning the search warrant and, as Duncan describes it, the various lies made in the affidavit in support of that search warrant. [DE 118, Page ID# 1410-12]. The problem for Duncan is that Spedding made that very motion requesting a *Franks* hearing. [DE 19]. The Court denied the motion. [DE 30]. Spedding asserted the argument again prior to sentencing [DE 91], and the Sixth Circuit affirmed the ruling [DE 109]. Spedding is not ineffective simply because he lost an argument. *See Hodge v. Haeberlin*, 579 F.3d 627, 644 (6th Cir. 2009) ("Counsel does not fall below [*Strickland*] standard by failing to prevail when arguing a debatable point to the court").

The remaining arguments from Duncan are without any detail that would permit the Court to discern his specific claims. For example, Duncan complains that Spedding "failed to investigate or present available, material, exculpatory evidence

10

and testimony at trial and failed to timely object to the unlawful admission of evidence by the prosecution." [DE 118, Page ID# 1414]. Yet, Duncan never identifies or explain what evidence or testimony Spedding should have presented or objected to at trial. Duncan similarly complains that Spedding should have investigated evidence and legal authority for sentencing and presented the strongest issues on appeal. [DE 118, Page ID# 1415]. Again, Duncan provides no specificity for these vague allegations. To reach the *Strickland* analysis, Duncan must present more than conclusory statements. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant habeas relief). *See also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (holding that a "conclusory statement" without more is "wholly insufficient to raise the issue of ineffective assistance of counsel"). Thus, where a defendant has not provided any detail to support or even comprehend his claims, those claims should be dismissed. *See Johnson v. United States*, 457 Fed. App'x 462, 466-67 (6th Cir. 2012); *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013).

In summary, Duncan's cumulative-error arguments are based upon one argument that counsel actually made at the trial court level and three arguments for which Duncan provides conclusory statements. For these reasons, the Court will recommend dismissal of Duncan's third ground.

E.     **GROUND FOUR: CONSTITUTIONAL VIOLATIONS**

Duncan fourth and final ground are a running list of constitutional violations he allegedly suffered. His fourth ground, in total, reads as follows: "Mr. Duncan's

11

conviction and sentence are violative of his right to freedom of speech and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense, and to compulsory process, and his right to be free of cruel and unusual punishment under the Constitution." [DE 118, Page ID# 1396]. Duncan's laundry list of constitutional issues is never explained or expounded upon anywhere in his petition. As stated above, conclusory allegations will not support habeas relief. *Short v. United States*, 504 F.3d 63, 65 (6th Cir. 1974) (affirming denial of a § 2255 motion because petitioner's claims "were stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof.").

### III.     CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying

constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Duncan has asserted three grounds in his petition based upon ineffective assistance of counsel and a fourth ground asserting certain constitutional violations. As the first ground, Duncan complains about not knowing about the admissibility of certain cell phone evidence. The cell phone evidence, however, played a minor role in Duncan's culpability and its exclusion would not have likely changed the trial's outcome. Duncan argued in his second ground that counsel should have advised him of the possible benefits of seeking a bench trial. The record, however, makes clear that even if Duncan was able to seek a bench trial, there was little evidence to support his arguments for cooperation credit. Duncan's third ground casts the broad argument of cumulative effect but most of the argument is stated in broad, sweeping allegations without any specificity of what his counsel should have done differently or how such unspecified conduct prejudiced him. The fourth and final argument asserted by Duncan lists several constitutional based concern, but Duncan never explains these claims with any detail. The Court is left guessing at Duncan's claims.

Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

### IV.   CONCLUSION

For the reasons stated herein, the Court **RECOMMENDS**:

1)   The District Court **DENY**, with prejudice, Duncan's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE 115, 118]; and

2)   The District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 5th day of December, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY